# United States Court of Appeals
## For the First Circuit

No. 01-1741

RICARDO F. VELÁSQUEZ,
SUSANA D. GRANADOS-URIZAR,
ELUVIA R. GRANADOS-URIZAR,

Petitioners,

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF
THE UNITED STATES,

Respondent.

---

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Torruella and Lipez, Circuit Judges,

and McAuliffe,* District Judge.

---

Randy Olen, for petitioners.
Anthony P. Nicastro, Attorney, Office of Immigration Litigation, Civil Division, with whom Kurt B. Larson, Attorney, Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, and David V. Bernal, Assistant Director, Office of the Immigration Litigation, were on brief for respondent.

---

August 29, 2003

---

* Of the District of New Hampshire, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>.  Ricardo Velásquez, Susana D. Granados-Urizar, and Eluvia Rosalina Granados-Urizar (collectively "petitioners") seek review of a decision by the Board of Immigration Appeals ("Board" or "BIA") denying their application for asylum and withholding of deportation.  We affirm the Board's decision.

## I.

Petitioners, a father and his two adult daughters, are natives and citizens of Guatemala.[1]  All three entered the United States without inspection in September 1989.  The Immigration and Naturalization Service ("INS") charged petitioners with being removable as aliens present in the United States without being admitted or paroled.  <u>See</u> 8 U.S.C. § 1182(a)(6)(A)(i).  On August 18, 1999, petitioners, represented by counsel, appeared before an Immigration Judge ("IJ"), conceded removability, and indicated that they would seek relief from removal in the form of asylum and withholding of deportation.[2]  The IJ found petitioners removable as charged and denied their applications for relief.  The

---

[1]  The three applications for asylum were consolidated, and on June 18, 2001, this Court granted petitioners' request to similarly consolidate their cases before us.

[2]  We review only the denial of asylum claim. Since the standard for withholding deportation is more stringent than that for asylum, "a petitioner unable to satisfy the asylum standard fails, <u>a fortiori</u>, to satisfy the former." <u>Álvarez-Flores</u> v. <u>INS</u>, 909 F.2d 1, 4 (1st Cir. 1990); <u>accord</u> <u>Aguilar-Solís</u> v. <u>INS</u>, 168 F.3d 565, 569 n.3 (1st Cir. 1999) (noting that "withholding of deportation requires a clear probability of persecution" (citations omitted)).

Board, noting the changed conditions in Guatemala and petitioners' failure to prove persecution, affirmed the IJ's decision and dismissed the appeal.

The evidence presented before the IJ and adopted by the Board confirms that petitioners were witnesses to various acts of guerrilla violence that plagued Guatemala in the early 1980s. Specifically, Velásquez's sister and brother-in-law were killed by guerrillas in September 1981, after refusing to give them money and assistance. Following these murders, Velásquez, himself, received two death threats, allegedly because his family was wealthier than average Guatemalans. After receiving the threats, petitioners fled to another part of Guatemala, and, subsequently, their home and store were burned down.

Petitioners spent the next eight years in Guatemala without incident. During this time, Velásquez served in the Army's Civilian Defense Patrols for approximately three years, fighting the guerrillas. Following his stint in the army, Velásquez moved his family to another area of Guatemala where the guerrillas were not as active. During these years, Velásquez worked in the fields and sent his children to school without incident.

In 1989, petitioners came to the United States, leaving several family members behind, including Velásquez's longtime companion, two of his children, and Granados-Urizar's daughter. Though petitioners eventually lost contact with these relatives,

-3-

the record indicates that no harm has befallen them. In fact, it appears that Velásquez's companion is gainfully and safely employed in Guatemala.

The IJ denied the applications for asylum, concluding that petitioners did not meet their burden of establishing either past persecution or a well-founded fear of future persecution. The IJ did, however, grant petitioners voluntary departure. The Board dismissed petitioners' appeal, while re-instating the grant of voluntary departure. This appeal followed.

**II.**

It is well settled that findings of fact by the Board are to be reviewed under the deferential "substantial evidence" standard. Álvarez-Flores, 909 F.2d at 3. The Board's determination that petitioners were not eligible for asylum "must be upheld if 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" INS v. Elías-Zacharias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105(A)(4)). We will not reverse simply because we disagree with the Board's evaluation of the facts. Álvarez-Flores, 909 F.2d at 3. Indeed, the Board's decision can be reversed only if the evidence presented by petitioners was so conclusive that any reasonable adjudicator would be compelled to conclude the contrary. 8 U.S.C. § 1252(b)(4)(B) (2000); see also Elías-Zacharias, 502 U.S. at 481. The evidence presented by petitioners falls short of that mark.

-4-

In the initial proceedings, the alien bears the burden of establishing eligibility for asylum by proving either past persecution or a well-founded fear of persecution. 8 C.F.R. § 208.13(b).

## A. Past Persecution

The IJ determined that petitioners could not succeed in their claim of past persecution. To prove past persecution, an applicant must demonstrate that he or she has suffered persecution on account of one of the five enumerated grounds: race, religion, nationality, membership in a particular social group, or political opinion. Id. § 208.13(b)(1). The IJ found, and the Board agreed, that petitioners failed to provide conclusive evidence that they were targeted by the guerrillas based on any of the protected grounds.

Petitioners bear the burden of establishing that they fall within one of five enumerated grounds. 8 C.F.R. § 208.13(a); see also Álvarez-Flores, 909 F.2d at 3 ("Petitioner bears the burden of proving eligibility for asylum. . . ."). In an attempt to satisfy this burden, petitioners contend that their social status and political beliefs "singled them out" as targets for the guerrillas. The IJ rejected that position and, instead, relied upon evidence showing that thousands of politically neutral Guatemalans met with the same fate, concluding that petitioners were not persecuted on an individual basis. Indeed, the record as

a whole bespeaks of general harm attributable to the widespread civil strife that plagued Guatemala during that time. Congress, however, has not "generally opened the doors to those merely fleeing from civil war." Velásquez-Valencia v. INS, 244 F.3d 48, 51 (1st Cir. 2001). Furthermore, the IJ looked at the fact that petitioners spent eight years in Guatemala after the alleged persecution. There is no indication that petitioners changed their political opinion or their social class during that time; in fact, petitioners were able to live and work without interference from the guerrillas. The evidence clearly supports the IJ's finding that petitioners suffered no more than thousands of other Guatemalans during this period of civil unrest. Consequently, the evidence does not compel us to reverse the Board's finding that petitioners were not targeted on any individual basis, much less on one of the five enumerated grounds.

### B. Well-Founded Fear of Persecution

The IJ similarly found that petitioners failed to establish a well-founded fear of persecution. Petitioners have two routes by which they can establish a well-founded fear of persecution: (1) they can offer specific proof, Álvarez-Flores, 909 F.2d at 5, or (2) they can claim the benefit of a regulatory presumption based on proof of past persecution, 8 C.F.R. § 208.13 (b)(1). As discussed above, petitioners have failed to establish past persecution. Therefore, because they are not entitled to a

presumption, they must point to specific proof to justify a well-founded fear of persecution.  Nelson v. INS, 232 F.3d 258, 264 (1st Cir. 2000).

To demonstrate a well-founded fear of future persecution by direct evidence, a petitioner must satisfy both an objective and subjective test.  Álvarez-Flores, 909 F.2d at 5.  Under the subjective requirement, a petitioner must prove that his fear is genuine, id., while the objective component requires showing by "credible, direct and specific evidence" that this fear is reasonable.  Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992) (internal quotations and citation omitted).  Generally, "the BIA requires that an applicant show that a reasonable person in his circumstances would fear persecution."  Álvarez-Flores, 909 F.2d at 3 (internal quotations and citation omitted).

Petitioners only point to evidence of past acts.  The IJ found that there was no evidence on the record to indicate that petitioners would suffer any harm should they be returned to their homeland.  Rather, the evidence indicates that petitioners could live peacefully and prosperously in Guatemala.  As noted by the IJ and the Board, numerous relatives of the petitioners have lived, undisturbed, in Guatemala for the past twenty years.  See Aguilar-Solís, 168 F.3d at 573 ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.").  Furthermore,

-7-

petitioners presented no evidence that the guerrillas sought retribution against any of the remaining family members. Therefore, it is clear that petitioners have not demonstrated by "credible, direct and specific evidence" a reasonable fear of persecution. As such, substantial evidence supports the IJ's finding that petitioners will not be targets upon their return to Guatemala.

In sum, we see no need to disturb the findings below. The IJ and the Board, after carefully considering a great deal of evidence, concluded that petitioners had not met their burden in establishing past persecution or a well-founded fear of future persecution. Since there exists no compelling evidence to the contrary, we defer to this conclusion.

## III.

Petitioners also ask that, in the alternative, we grant them humanitarian asylum. However, because this Court lacks jurisdiction to review claims raised for the first time in a petition for review, we cannot decide whether they qualify for such relief. Mendes v. INS, 197 F.3d 6, 12 (1st Cir. 1999); see also Bernal v. Vallejo, 195 F.3d 56, 64 (1st Cir. 1999).

## IV.

Finally, the government's argument that this court lacks jurisdiction to reinstate voluntary departure fails. See Khalil v. Ashcroft, 337 F.3d 50, 56 (1st Cir. 2003) (reinstating voluntary

departure under permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")).  We therefore reinstate the voluntary departure period granted by the Board.

**V.**

For the reasons discussed above, we **<u>affirm</u>** the order of the Board of Immigration Appeals, **and the voluntary departure period is reinstated.**

**"Concurrence and Dissenting follows"**

**McAuliffe, <u>District Judge</u> (Concurring in part and Dissenting in part).** Except in one respect, I am in complete agreement with the panel opinion. Because I believe an amendment to the Immigration and Nationality Act made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, and codified at 8 U.S.C. § 1252(a)(2)(B)(i), probably eliminated this court's jurisdiction to reinstate a lapsed period of voluntary departure in conjunction with our adjudication of a petition for review,[4] and because I do not believe we are bound by any contrary panel precedent in this circuit, I would not simply reinstate the lapsed period of voluntary departure.

Since we granted Respondent's petition for rehearing in this case, and because what precedent exists in this circuit neither addresses nor resolves the specific issue raised by Respondent in that petition, I would address and resolve on its merits the question of this court's jurisdiction to reinstate a lapsed period of voluntary departure.

---

[4] <u>See</u>, <u>e.g.</u>, <u>Zazueta-Carrillo</u> v. <u>Ashcroft</u>, 322 F.3d 1166 (9th Cir. 2003). <u>See also</u> 8 U.S.C. § 1229c(f) (providing that no court shall have jurisdiction to "order a stay of an alien's removal pending consideration of any claim with respect to voluntary departure" and, at least implicitly, suggesting that no court shall have jurisdiction to reinstate a lapsed period of voluntary departure); 8 C.F.R. §§ 240.26(f) and (h) (discussing the authority to grant extensions of time within which to voluntarily depart and the authority to reinstate a lapsed period of voluntary departure).