# United States Court of Appeals

## For the First Circuit

No. 02-1762

GERMAN N. GUZMAN,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

BOARD OF IMMIGRATION APPEALS

Before

Howard, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

Stephen A. Lagana for petitioner.
William C. Minick, Attorney, U.S. Department of Justice, with whom Robert D. McCallum, Jr., Assistant Attorney General, Civil Division, and Linda S. Wernery, Senior Litigation Counsel, were on brief, for respondent.

April 25, 2003

**CAMPBELL**, <u>**Senior Circuit Judge**</u>.  German Guzman ("Guzman"), a native and citizen of Guatemala, petitions for review of the denial by the Board of Immigration Appeals ("BIA") of his application for asylum and for the withholding of removal, and his motion to remand in order to apply for protection under the Convention Against Torture.[1]  <u>See</u> 8 U.S.C. § 1252(a)(1999).  We affirm the order of the BIA and deny the petition.

## BACKGROUND

Guzman entered the United States illegally on January 5, 1990, somewhere along the Mexican border.  On June 26, 1997, the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging Guzman with being removable under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled.  Guzman admitted the factual allegations in the notice and conceded removability, but sought relief in the form of asylum and withholding of removal.

On January 24, 1998, an immigration judge held a hearing regarding Guzman's application.  Guzman testified that he was a member of the Guatemalan Army during the civil war and would be

---

[1]The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, was implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761 (codified at 8 U.S.C. § 1231 (2000)).  Article 3 prohibits states from returning individuals to other states where there are substantial grounds for believing they will be subject to torture.

killed if he returned to Guatemala. He based his apprehension, in part, on an incident that occurred shortly before he fled the country. Guzman testified that, in 1989, while on patrol in uniform in the town of San Sebastian, he and three other soldiers were kidnaped by an unknown number of unidentified individuals. Guzman reported that he and the others were blindfolded, taken into the hills surrounding the town, and beaten. Although Guzman did not know why or by whom he was kidnaped, he surmised they were guerrilla fighters. After three hours, Guzman was able to escape. As a result of the encounter he sustained a broken finger. After his escape, Guzman reported the incident to his supervisor in the army, a lieutenant colonel. Guzman testified that his supervisor stated that "we could be killed at anytime" and that Guzman's safety could not be guaranteed. Days later, Guzman left Guatemala, eventually entering the United States.

Guzman's apprehension of death were he to be returned to Guatemala rested also on communications with members of his family still in Guatemala. Guzman testified that his wife told him to stay in the United States because if he returned to Guatemala "probably they would kill [him]." Guzman's wife also reported that in 1994, "they came looking for him." When asked to identify the "they," Guzman surmised "I think that those are the guerrillas." Likewise, Guzman reported that his mother advised him not to return to Guatemala because his first cousin was killed in 1996. Guzman

was unable to testify with certainty who had killed his cousin or why, but he speculated that it "[c]ould be the guerrillas because my cousin was a member of the army." Guzman admitted that he also fears returning to Guatemala because he was never discharged from the Guatemalan Army, thus, upon fleeing the country, he became a deserter.

In an oral decision made at the conclusion of the hearing, the immigration judge denied Guzman's application for asylum and for the withholding of removal. While the immigration judge found Guzman credible, he concluded that Guzman's one-time abduction and beating during the civil war did not constitute the "past persecution" necessary to obtain asylum. The immigration judge also concluded that Guzman failed to establish that he had a "well-founded fear of future persecution" in Guatemala. The judge observed that if Guzman were to return to Guatemala his situation would be no different from that of any other citizen. The judge, citing to the State Department's Profile of Asylum Claims and Country Conditions, also noted that the civil war in Guatemala had ended in 1996.

Guzman appealed from the immigration judge's ruling to the BIA. While his appeal was pending, Guzman filed a motion to remand the case to the immigration judge to apply for protection under the Convention Against Torture. That motion, filed November 4, 1999, stated that "[t]his relief was previously unavailable at

the time the Respondent had his hearing for Asylum/Withholding of Deportation."  Guzman appended no documentation supporting his claim for relief.

On May 21, 2002, the BIA affirmed the immigration judge's decision denying asylum and withholding of removal.  In addition to the reasons set forth by the immigration judge, the BIA noted that Guzman had failed to demonstrate that any mistreatment had occurred on account of one of the five statutorily protected grounds -- his race, religion, nationality, membership in a particular social group, or political opinion.  See 8 C.F.R. § 208.13(b)(1)(2002). The BIA also denied Guzman's motion to remand to apply for protection under the Convention Against Torture.  According to the BIA, Guzman's motion failed to include any evidence or statements of torture which he fears, thus he failed to offer evidence that established a prima facie case for protection under the Convention Against Torture.  See id. § 3.23(b)(3).

This petition for review followed.

## DISCUSSION

### A.        Denial of Asylum and Withholding of Removal

We review the Board's findings of fact and credibility under a "substantial evidence" standard.  Yatskin v. INS, 255 F.3d 5, 9 (1st Cir. 2001).  Board determinations of statutory eligibility for relief from deportation, whether via asylum or withholding of removal, are conclusive if "supported by reasonable,

substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)). This standard of review is quite deferential: we will not reverse unless "the record evidence would compel a reasonable factfinder to make a contrary determination." Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999).

The BIA had ample evidence from which to reject Guzman's asylum claim and a fortiori his petition to withhold removal. Velasquez v. Ashcroft, 316 F.3d 31 n.2 (1st Cir. 2002) (noting that because the standard for withholding deportation is more stringent than that for asylum, "a petitioner unable to satisfy the asylum standard fails, a fortiori, to satisfy the former"). To carry his burden of establishing eligibility for asylum, Guzman had to prove either past persecution or a well-founded fear of future persecution based on one of the enumerated statutory grounds; race, religion, nationality, membership in a particular social group, or political opinion. Id. at 65 (citing 8 C.F.R. § 208.13(b)(1)). If an applicant can prove past persecution, a regulatory presumption that the applicant has a well-founded fear of future persecution is triggered. 8 C.F.R. § 208.13(b)(1).

To establish past persecution more than harassment or spasmodic mistreatment by a totalitarian regime must be shown. Aguilar-Solis, 168 F.3d at 570 (the persecution alleged must be more than mere harassment). Guzman bears a heavy burden;

-6-

establishing past persecution is a daunting task.  See Ravindran v. INS, 976 F.2d 754, 756-60 (1st Cir. 1992) (persecution not found where member of minority ethnic group had been interrogated and beaten for three days in prison and warned about pursuing political activities); Kapcia v. INS, 944 F.2d 702, 704, 708 (10th Cir. 1991) (no finding of past persecution where one petitioner was "arrested four times, detained three times, and beaten once," and another "was detained for a two-day period during which time he was interrogated and beaten" and warned not to continue his political activities); Kubon v. INS, 913 F.2d 386, 388 (7th Cir. 1990) ("brief confinement for political opposition to a totalitarian regime does not necessarily constitute persecution").  Guzman must establish, moreover, through direct or circumstantial evidence, that his alleged persecutors were motivated by one of the statutorily enumerated grounds.  Elias-Zacarias, 502 U.S. at 483.

Here, there is substantial support for the BIA's finding that petitioner failed to show he was singled out for persecution. The record shows only that, while in the Army, Guzman was kidnaped by unknown individuals who may have been guerrillas, thrown into the back of a truck, beaten and held captive for approximately three hours resulting in superficial physical harm. Even assuming, without deciding, that targeting by guerrillas because of army affiliation could be a statutorily protected ground, this one-time

kidnaping and beating falls well short of establishing "past persecution."

Both a subjective and objective component must underlie a claim of a "well-founded fear of future persecution." 8 U.S.C. § 1101(a)(42)(A); Ravindran, 976 F.2d at 758. The asserted fear must be subjectively genuine, and objectively, the applicant must show "'by credible, direct, and specific evidence, . . . facts that would support a reasonable fear that the petitioner faces persecution.'" Ravindran, 976 F.2d at 758 (quoting Alvarez-Flores v. INS, 909 F.2d 1, 5 (1st Cir. 1990)).

Here, the immigration judge accepted as genuine Guzman's subjective fear of persecution, but determined that Guzman's evidence fell short of establishing his fear was objectively reasonable. The civil war was concluded in 1996, and there was no evidence that Guzman would now be singled out for harm because he had once been an army member. While Guzman testified that his wife received a threat about his well-being in 1994 and that his first cousin was killed, the origin of, and the reason for, the threats against him were unclear, as was the cause of his cousin's death. Both of these events apparently occurred before the cease-fire in 1996. The record established that other relatives of Guzman have lived, undisturbed, in Guatemala for more than a decade. See Aguilar-Solis, 168 F.3d at 573 ("[T]he fact that close relatives

-8-

continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.")

The BIA, therefore, supportably concluded that Guzman failed to establish eligibility for asylum and for withholding of removal. Velasquez, 316 F.3d at 31 n.2; see also Alvarez-Flores, 909 F.2d at 4 (noting that a petitioner who fails to satisfy the asylum standard automatically fails to satisfy the standard for withholding of deportation).

**B.        Convention Against Torture**

Guzman argues that the BIA abused its discretion when it denied his motion to remand for consideration of his claim for protection under the Convention Against Torture. The BIA treated Guzman's motion to remand as a motion to reopen because Guzman requested additional proceedings pursuant to newly enacted legislation implementing a previously unavailable avenue of protection. See Al Najar v. Ashcroft, 257 F.3d 1262, 1301 (11th Cir. 2001). The BIA denied the motion because Guzman "failed to offer evidence that establishes a prima facie case for protection under the Convention Against Torture."

The burden of proof was on Guzman to establish that it is more likely than not that he would be tortured if he were removed to Guatemala. 8 C.F.R. § 208.16(c)(2). Generally, a motion to reopen must be accompanied "by the appropriate application for

-9-

relief and all supporting documentation."  Id. § 3.23(b)(3).[2]  The supporting documentation must present a "prima facie case of eligibility for relief."  INS v. Abdu, 485 U.S. 94, 105 (1988).  To establish a prima facie showing of torture, a petitioner must offer specific showings that he or she will be subject to "severe pain or suffering, whether physical or mental" by or at "the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity."  8 C.F.R. § 208.18(a)(1).

Guzman's request for relief under Article 3 of the Convention Against Torture did not contain supporting documentation, nor, indeed, did it describe the nature of Guzman's Convention Against Torture claim.  Guzman urges us to consider the evidence in support of his application for asylum as evidence in support of his Convention Against Torture claim.  But even so, this

---

[2]After the Convention Against Torture went into effect in this country, the INS issued regulations governing petitions to reopen based on the convention, Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (1999) (codified in scattered sections of 8 C.F.R.).  For aliens who had requests pending with the INS on March 22, 1999, for protection under Article 3 of the Convention Against Torture, a more lenient standard for reopening exists.  8 C.F.R. § 208.18(b)(3)(B)(ii).  Under the more lenient standard a motion to reopen is not subject to the strictures of 8 U.S.C. § 3.23 and "shall be granted if it is accompanied by the notice described in paragraph (b)(3)(ii) or by other convincing evidence that the alien had a request pending with the Service for protection under Article 3 of the Convention Against Torture on March 22, 1999."  Id.  Guzman did not have a request pending for relief under the Convention Against Torture on March 22, 1999, he did not file his motion for protection until November 4, 1999.  As a result, he must meet the requirements set forth in 8 U.S.C. § 3.23.

evidence does not make out a prima facie case of eligibility for relief.[3]   The kidnaping and beating that Guzman described in his asylum application were not inflicted on behalf of the government. There is thus no evidence from which to infer that any harm suffered upon return would be by or at "the instigation of or with the consent or acquiescence of, a public officials or other person acting in an official capacity."   Guzman presented no evidence, moreover, that any penalties imposed upon him for desertion from the Army would involve torture or the like.

Accordingly, the petition for review is **denied**.

---

[3]Guzman conceded at oral argument that he had no additional evidence to present to the BIA in support of his application for protection under the Convention Against Torture.