**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-2548

TREACE CHRISTIEN DONDOCAMBEY,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

---

Before

Torruella, Lynch, and Howard, <u>Circuit Judges</u>.

---

<u>Thomas V. Massucci</u> on brief for petitioner.

<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
<u>Michelle E. Gorden</u>, Senior Litigation Counsel, Office of
Immigration Litigation, and <u>Thomas H. Tousley</u>, Attorney, Office of
Immigration Litigation, on brief for respondent.

---

August 20, 2004

---

**LYNCH**, **Circuit Judge**.  Treace Dondocambey, a native and citizen of Indonesia, entered the United States on November 17, 2000, as a visitor for pleasure.  She remained here longer than her authorized stay, and the INS issued a Notice to Appear on August 28, 2001, charging the petitioner with being removable.  On November 7, 2001, the petitioner, with the assistance of counsel, conceded removability, renewed her application for political asylum and withholding of removal, and requested protection under Article 3 of the Convention Against Torture.  On May 21, 2002, the Immigration Judge (IJ) denied her claims, finding that she had not shown past persecution or a well-founded fear of future persecution on account of her religion, the basis for her claim of asylum, and that she had offered no evidence of torture to establish a claim under the Convention Against Torture.  See 8 C.F.R. § 1208.16(c) (discussing eligibility for withholding of removal under the Convention Against Torture).  The Board of Immigration Appeals (BIA) affirmed the decision without opinion, and Dondocambey now petitions for review of the order.  We affirm the BIA decision.

## I.

We recount the facts largely as accepted by the IJ. Dondocambey is a Christian.  In May of 1998, violent riots broke out in Indonesia often directed against the ethnic Chinese.  In the midst of this turmoil, the petitioner was attacked by a group of individuals on May 14, 1998.  On the day of the attack, the riots

-2-

and looting continued on the streets in front of her office in Jakarta, and she became increasingly fearful for her safety. She sought and received permission to leave work early, and she contacted two of her friends. The three women attempted to go home. Along the way, a group of people carrying sharp objects approached and stopped them. The group forced the women from the car, tried to steal their wallets, jewelry, and cell phones; they then attempted to rape each of the three women.

Dondocambey was dragged into the bushes by two attackers. She pleaded with her attackers not to rape her. She told them that she was pregnant. In response to a direct question about her religion, she lied and said that she was Muslim. She spoke a few words in Arabic to convince them. The leader of the group ordered the others to let her go. In testimony she said that if she had revealed her true religion, she believes the attackers would have raped and perhaps killed her. After the attackers released her, she drove home accompanied by one of the other two women, who had been badly beaten, but was not raped after she said she was menstruating. The third woman did not leave with the petitioner. Dondocambey testified that she tried to contact her after the incident and that she later heard the woman moved to Australia.

The petitioner returned to work approximately 7-10 days after the attack. She remained in Indonesia for more than two and one-half years, until she entered the United States in November of

2000.  During this time, the petitioner did not experience another act of violence.  She stated that she continued to feel scared and that she changed her behavior to avoid large crowds.  Her family, including her husband, still live in Indonesia.  They are Christians, and since the time of the petitioner's journey to the United States, they have lived unharmed in Indonesia.  However, the petitioner stated, without elaboration, that her family had problems when they wanted to go to church.

## II.

We summarize the findings of the IJ, which were affirmed without opinion by the BIA.[1]  The IJ found that the petitioner's testimony regarding the attack was credible and determined that "the rioters certainly did not pursue these three young women on account of their being Christian."  As the IJ explained, "there is no way that the rioters could have known whether or not the women were Christian or Muslims, and in point of fact at least one of the other women was not a Christian." The IJ also found that the attempted rapes were not based on the women being Christian, for similar reasons.

The IJ also considered the 2001 United States Department of State Country Report on the topic of violence against

---

[1] When the BIA affirms the IJ's decision without opinion, the Court of Appeals reviews the findings and conclusions of the IJ as the final agency determination.  Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

-4-

Christians.  The IJ recognized that the Indonesian government is ineffective against some forms of violence.  That violence involved "attacks [by] and against all of the particular religious factions."  The IJ noted that "[t]here [have] been attacks on churches, mosque [sic], temples, and other religious facilities during the year, and the government views proselyting by recognized religions in areas heavily dominated by another recognized religion as potentially dangerous and disruptive and discourages it."  The IJ also considered that the Indonesian constitution provides for religious freedom of recognized religions, and this freedom is generally respected by the government.  The law officially recognizes five religions, including Islam, Catholicism, Protestantism, Buddhism, and Hinduism, and the government lifted its ban on Jehovah's Witnesses in June 2001.  The IJ found that it was clear "that while there appears to be overt discrimination between the respective religious groups, there is no showing that the discrimination is so pervasive and intolerable and either government directed or condoned as to be tantamount to persecution."

The IJ also determined that before the attack in May of 1998, the petitioner had experienced no difficulty on account of her religious beliefs:  she had completed high school, attended an accounting academy, and held a "responsible position" with a large company in Jakarta.  Further, she returned to work after the attack

until she made plans to come to the United States in October of 2000. During that two and one-half years, she "experienced no difficulties"; "her family remains in Jakarta and is unharmed and apparently doing well."

On the asylum claim, the IJ concluded that while the attack on the petitioner was "regrettable and reprehensible," the attack did not take place on account of her religion. The IJ found the attacks to be "acts of criminality, perhaps targeting those of Chinese ethnicity, but clearly not directed against those of the Christian faith."[2]

As to the Convention Against Torture claim,[3] the IJ also

---

[2] The petitioner argues in her brief that the attack could have been based on Chinese ethnicity. The petitioner cannot raise this claim for the first time in her petition for review. Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992)(the petitioner is required to exhaust administrative remedies prior to seeking judicial remedies, and "[i]ssues not raised before the Board may not be raised for the first time upon judicial review of the Board's decision"). There is no evidence in the record that the petitioner clearly raised the ethnic Chinese claim before the IJ or the BIA. To the contrary, in her affidavit in support of her asylum application, she states that she is an "Indonesian of ethnic Manadonese and Christian religion." She does assert in her brief that her physical appearance is similar to that of an ethnic Chinese. However, in response to the question on her application for asylum concerning the basis for which she has "ever been mistreated or threatened," she checked only the box for religion. Furthermore, as we read the record, there is nothing to compel the conclusion that discrimination against individuals of Chinese ethnicity caused her to be subject to past persecution or to have a well-founded fear of future persecution.

[3] The petitioner has waived her claim under the Convention Against Torture because she did not raise it in her petition for review. See Mediouni v. INS, 314 F.3d 24, 28 n.5 (1st Cir. 2002). In any event, we would uphold the IJ's denial of relief under the

-6-

concluded that the petitioner offered no evidence that the Indonesian government or its officials torture persons on account of their religion.

## III.

We review the IJ's findings under the deferential substantial evidence standard. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Determinations of eligibility for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record, considered as a whole." Id. (internal quotation omitted). "To reverse the [Immigration Judge's] findings we must conclude that the evidence not only supports that conclusion, but compels it." Id. at 481 n.1.

The burden of proof for establishing eligibility for asylum lies with the petitioner. 8 C.F.R. § 1208.13(a). Applicants must show either past persecution or a well-founded fear of future persecution based on one of the five statutory grounds of "race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1208.13(b)(1).

To prove past persecution, the petitioner must provide persuasive evidence that she was persecuted on any of the five statutory grounds. Velasquez v. Ashcroft, 316 F.3d 31, 34-35 (1st Cir. 2002). To establish a well-founded fear of future

---

Convention Against Torture because the IJ's determination is supported by substantial evidence.

-7-

persecution, "applicants can offer specific proof, or they can claim the benefit of a regulatory presumption based on proof of past persecution." Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003). To demonstrate a well-founded fear of future persecution, "a petitioner must satisfy both an objective and a subjective test." Id. The individual's fear "must be both genuine and objectively reasonable." Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999).

"[W]ithholding [of removal] is mandatory if an alien 'establish[es] that it is more likely than not that [he] would be subject to persecution on one of the specified grounds.'" INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999) (quoting INS v. Stevic, 467 U.S. 407, 429-30 (1984)). "Because the 'more likely than not' standard for withholding [removal] is more stringent than that for asylum, a petitioner unable to satisfy the asylum standard" will also not satisfy the withholding standard. Albathani, 318 F.3d at 372.

Substantial evidence supports the IJ's finding that the attack on petitioner was not on account of her Christian faith. Additionally, the petitioner lived in Indonesia for over two years after the attack. Although she expressed some fear of large crowds and testified that she changed her behavior to avoid them, she did not experience any violence or threats because of her Christian faith, nor has her family since her departure.

Because petitioner has not satisfied the more lenient asylum standard, she has also failed to satisfy the withholding of removal standard. Accordingly, we deny the petition for review.

**IV.**

The petition for review is **<u>denied</u>**.