**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 05-2092

CARLOS A. BETANCUR LÓPEZ,

Petitioner,

v.

ALBERTO R. GONZÁLES, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Roxana V. Muro and FitzGerald & Company, LLC, for petitioner.
Peter D. Keisler, Assistant Attorney General, Barbara C.
Biddle, and Jeffrey Clair, Attorneys, Civil Division, for
respondent.

September 6, 2006

**LIPEZ**, <u>Circuit Judge</u>.  Petitioner Carlos Alberto Betancur López, a native and citizen of Colombia, seeks review of the Board of Immigration Appeals ("BIA") decision affirming the Immigration Judge's ("IJ") decision denying Betancur's application for asylum. The IJ had found that Betancur failed to meet his burden of either establishing past persecution or a well-founded fear of future persecution.  We deny the petition for review.

**I.**

Carlos Alberto Betancur López ("Betancur"), is a 20-year-old citizen of Colombia.  Betancur entered the United States on August 4, 2002 in Miami, Florida, and applied for asylum. Immigration officials interviewed him at the airport and paroled him into the United States after determining that he had a credible fear of persecution.  He was charged with removability pursuant to §§ 212(a)(6)(C)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act.  At his hearing before the IJ on December 12, 2003, Betancur conceded removability.  The IJ then took testimony on his application for asylum, and also considered his claims for withholding of removal and relief under the Convention Against Torture ("CAT").

**A.  Betancur's testimony**

As a 19-year-old in Colombia, working on his family's farm, he was approached by a group of men who identified themselves as members of the "Revolutionary Armed Forces of Colombia"

-2-

("FARC"). FARC is Colombia's largest and most active guerrilla organization and has employed extortion, kidnaping, and murder to further its political and economic objectives. Betancur testified that the guerrillas asked him to join FARC and stated that "life could be rough" if he refused. He refused, and later received a phone call at his farm and a separate phone call to his home, demanding that he join FARC. He again refused, and the guerrillas told him that "[he] should be careful because the offense [he] had made against them was unforgiveable."

At his father's urging, Betancur left his home and farm and went to the home of an uncle in Medellín, approximately one hour and fifteen minutes away by car. He stayed in hiding in Medellín for three weeks before leaving for the United States. After Betancur left Colombia, the guerrillas began to extort "protection payments" from his father, and told his father that if his son "ever come[s] back, he should forget that he ever had a son." Betancur testified that his family could not safely avoid FARC retribution by relocating to Medellín because "FARC has people everywhere, including in Medellin." As of the time of the removal hearing, Betancur testified that his father continues to make monthly payments to FARC and no one in his family has been physically harmed.

**B. The decisions of the IJ and the BIA**

The IJ found Betancur's testimony credible. However, he concluded that, "as an objective matter, the conditions [Betancur] faced in Colombia fall short of the standard for asylum, let alone withholding of removal." The IJ noted that "[i]t does appear that once [Betancur] refused to join the FARC . . . their threats could be construed as harm threatened on account of his political opinion." However, the IJ noted that while it is "deplorable" that "farm owners are frequently either forced off their land or forced to provide protection money to various groups," the IJ concluded "that is not, in the Court's estimation, what Congress contemplated when enacting the refugee statutes and creating asylum for people here in the United States. . . . [Betancur] does not have, objectively speaking, reasons to fear persecution, that is harm inflicted upon him on account of his political opinion, race, religion, nationality, or membership in a particular social group." The IJ also stated that, "in the Court's estimation, [Betancur] could have lived elsewhere in Colombia, and although perhaps facing a generalized threat of forced recruitment or other violence, did not [] appear to have objectively any reason to fear that members of the FARC would come looking for him on account of his refusing to join them."

Because the IJ concluded that Betancur failed to establish a well-founded fear of persecution meriting the grant of

asylum, the IJ also concluded that the petitioner failed to establish the higher burden for withholding of removal. The IJ also denied him CAT relief because he made no claim that the government would torture him or acquiesce to his torture on his return to Colombia. The IJ thus ordered him removed.

Betancur appealed to the BIA, which issued a per curiam decision. The BIA noted that it reviewed the record. Having done so, it "agree[d] that [Betancur] failed to meet his burden of establishing past persecution or a well-founded fear of persecution on account of one of the statutorily protected grounds, or that it is more likely than not that he will be persecuted or subjected to torture upon his return to Colombia." The BIA therefore affirmed the decision of the IJ.

**II.**

**A. Standards of review**

We review the factual findings of the BIA under the deferential "substantial evidence" standard. See Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review claims of legal error de novo. See Romilus, 385 F.3d at 5. "In this case, where the BIA's decision adopts portions of the IJ's opinion, we review those portions of

the IJ's opinion that the BIA has adopted." Romilus, 385 F.3d 1 at 5.

Betancur bears the burden of establishing eligibility for asylum by demonstrating that he is a "refugee." 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 208.13(a). A refugee is generally defined as any person who is outside his or her home country and "is unable or unwilling to return . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). If the applicant establishes past persecution, there is a legal presumption that the applicant has a well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1). To rebut this presumption, the government must show by a preponderance of the evidence that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution" or that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(1)(i). If the applicant has not established past persecution, the applicant retains the burden of establishing future persecution. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005). "Such a showing involves both subjective and objective components. The first component entails

a showing that the asylum seeker's fear of future persecution is genuine. The second component entails a showing that this fear is objectively reasonable." Id. (internal citations omitted).

In this case, the BIA found that Betancur had failed to establish past persecution or a well-founded fear of future persecution. Betancur challenges both of these determinations. First, he asserts that he has established past persecution, arguing that the IJ implicitly found that he had established past persecution based on imputed political opinion and therefore erred in assigning him the burden of establishing that relocation would be unsafe. Second, he argues that, even if he has not established past persecution, he has established a well-founded fear of future persecution and that he could not safely relocate to another part of Colombia.

## B. Past persecution

There is substantial evidence to support the BIA's determination that Betancur had not established past persecution. The BIA did not supply its own reasoning in its affirmance of the IJ's decision, only stating that it "agreed that [Betancur] failed to meet his burden of establishing past persecution." The IJ found that "[i]t does appear that once [Betancur] refused to join the FARC . . . their threats could be construed as harm threatened on account of his political opinion." However, the IJ also found that the type of harm that Betancur and his family suffered due to his

repeated refusal to join FARC -- i.e., economic extortion -- "is not . . . what Congress contemplated when enacting the refugee statutes and creating asylum for people here in the United States." This harm was part of the "deplorable situation [in Colombia] in which both FARC and the paramilitaries wreak havoc upon the civilian population" but it did not constitute "persecution" within the meaning of asylum law.

The record does not compel a contrary determination. "To establish past persecution more than harassment or spasmodic mistreatment . . . must be shown." Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003). "[I]nconvenience, unpleasantness, and even a modicum of suffering may not be enough to meet th[e] benchmark [for 'persecution']." Negeya v. Gonzales, 417 F.3d 78, 83 (1st Cir. 2005). Here, the record does not compel a finding that the guerrillas' demands that Betancur join their forces, and their economic extortion, rose to the level of persecution. See Guzman, 327 F.3d at 16 (finding that a "one-time kidnaping and beating [by possible guerrilla forces] falls well short of establishing 'past persecution'"). Having failed to establish past persecution, Betancur had the burden of establishing future persecution.[1]

---

[1] Betancur argues that the IJ erred by placing the burden of establishing the futility of relocation on him. However, this argument is predicated on Betancur's contention that he established past persecution. See 8 C.F.R. § 208.13(b)(1)(ii) (stating that the government has the burden of establishing the possibility and reasonableness of relocation where the asylum applicant has established past persecution). Since we have rejected that

## C. Future persecution

The IJ held that Betancur's fear of future persecution on the basis of political opinion was not objectively reasonable. "To satisfy the 'objectively reasonable' component of the [well-founded fear of persecution] test, an applicant must usually provide evidence that there is a reasonable possibility he or she would be singled out individually for persecution." Pieterson v. Ashcroft, 364 F.3d 38, 43 (1st Cir. 2004) (internal quotation marks and citation omitted). The IJ noted that the possibility of harm that Betancur faced on return to Colombia was the same harm that other Colombians faced generally, and that he had not established that the guerrillas would persecute him on his return because of his political opinion. Notably, the petitioner himself lived in Medellín for three weeks without incident prior to his departure from Colombia. While his father has been subject to demands for protection money, neither his father nor any other family members have been harmed. On these facts, the BIA was not compelled to find that Betancur established a well-founded fear of future persecution. See Guzman, 327 F.3d at 16 (finding no well-founded fear of future persecution where "[t]he record established that other relatives of Guzman have lived, undisturbed, in Guatemala for more than a decade"); Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st

---

argument, there is no basis for the petitioner's challenge to the IJ's allocation of the burden on the relocation issue.

Cir. 1999) ("The fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.").[2]

For these reasons, the petition for review is **<u>denied</u>**.

---

[2] On appeal, Betancur makes no argument regarding the BIA's denial of his withholding of removal and CAT claims. Thus, those claims have been waived. See <u>Tai</u> v. <u>Gonzales</u>, 423 F.3d 1, 6 (1st Cir. 2005). Even if Betancur had not waived his withholding claim, "[b]ecause the standard for withholding deportation is more stringent than that for asylum, a petitioner unable to satisfy the asylum standard fails, a fortiori, to satisfy the former." <u>Mediouni</u> v. <u>INS</u>, 314 F.3d 24, 27 (1st Cir. 2002) (internal quotation marks and citation omitted).