Carlos J. QUIJANO and Jean
M. Quijano, Appellants,

v.

UNITED STATES of America, Appellee.

No. 96–1053.

United States Court of Appeals,
First Circuit.

Heard May 7, 1996.

Decided Aug. 21, 1996.

Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and GERTNER,* U.S. District Judge.

CYR, Circuit Judge.

Appellants Carlos J. and Jean M. Quijano, husband and wife, appeal from a district court order rejecting their joint claim for a federal income tax refund relating to the 1990 sale of their residence located in the United Kingdom. We affirm the district court judgment.

## I

### BACKGROUND

Appellants, United States taxpayers, acquired their residence for 297,500 pounds sterling on September 30, 1986. The entire purchase price was financed through a mortgage loan in pounds sterling. On October 12, 1988, it was increased to 330,000 pounds (exchange rate: $1.73 to 1 pound); on March 27, 1990, to 333,180 pounds (exchange rate $1.62 to 1 pound). Ultimately, their capital improvements to the residence cost 45,647 pounds. No U.S. funds were used either to purchase or improve the residence. On July 27, 1990, it was sold for 453,374 pounds, net of selling expenses, and the mortgage loan was retired.

Appellants' 1990 joint federal income tax return originally reported a $308,811 capital gain, utilizing the exchange rate at date of purchase ($1.49 to 1 pound) to calculate the adjusted cost basis, but using the exchange rate at date of sale ($1.82 to 1 pound) to calculate the sale price. Appellants later amended their 1990 return to claim a $30,610 refund arrived at by utilizing the exchange rate at date of sale ($1.82 to 1 pound) to determine the adjusted cost basis as well as the sale price, thus resulting in a reduced $199,491 capital gain.

After the Internal Revenue Service disallowed their amended refund claim, appellants initiated the present action. The complaint alleged that Revenue Ruling 90–79 misinterprets our decision in *Willard Helburn, Inc. v. Commissioner,* 214 F.2d 815 (1st Cir.1954),

Paula N. Singer, Newton, MA, with whom Robert S. Grodberg and Vacovec, Mayotte & Singer, were on brief, for appellants.

Kenneth W. Rosenberg, Attorney, Tax Division, Department of Justice, Arlington, VA, with whom Jay P. McCloskey, United States Attorney, Bangor, ME, Loretta C. Argrett, Assistant Attorney General, Washington, DC, Gary R. Allen and Richard Farber, Attorneys, Tax Division, Department of Justice, Washington, DC, were on brief, for appellee.

* Of the District of Massachusetts, sitting by designation.

and that the tax imposed violates the Sixteenth Amendment, *see Eisner v. Macomber,* 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920). In due course, appellants moved for summary judgment. The government responded that the total cost basis of the residence must be arrived at by utilizing the respective dollar-pound exchange rates in effect when the residence was purchased and each capital-improvement payment was made. The parties stipulated that, thus calculated, appellants had overpaid $2,668, plus related interest and penalties not presently relevant. Ultimately, the district court entered judgment for appellants in the amount of $2,668 plus interest and penalties as provided by law. On appeal, appellants challenge the district court order rejecting their motion for summary judgment in the larger amount of $30,610.

## II

### DISCUSSION[1]

#### A. *Foreign Exchange Transactions*

We first consider the challenge to the tax refund calculation arrived at by the district court under Revenue Rulings 90–79 and 54–105. Section 1011 of the Internal Revenue Code provides that the "adjusted basis for determining the gain ... from the sale or other disposition of property, whenever acquired, shall be the basis (determined under section 1012 ... ), adjusted as provided in section 1016." 26 U.S.C. § 1011. Under section 1012, generally the basis of property is its cost. *Id.* § 1012. For relevant purposes, section 1016(a)(1) states that a proper adjustment shall be made for "expenditures ..., or other items, properly chargeable to capital...." *Id.* § 1016(a)(1).

Section 985(a) generally requires that all income tax liability determinations are to be made in the "taxpayer's functional currency," *id.* § 985(a), which is the U.S. dollar for individual United States taxpayers, *id.*

§ 985(b)(1)(A). With exceptions not relevant here, section 165(a) permits "a deduction [for] any loss sustained during the taxable year...." *Id.* § 165(a). Finally and importantly, in relevant part section 165(c) limits the deductions available to individual United States taxpayers to "(1) losses incurred in a trade or business [and] (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business...." *Id.* § 165(c).

#### 1. *Loss on Mortgage Loan Transaction*

The government essentially agrees that appellants sustained a loss in their mortgage loan transaction, since the value of the dollar declined, as against the pound sterling, from the time of the mortgage loan to the date of its repayment. Nonetheless, says the government, appellants may not offset their mortgage-loan-transaction loss against their real-estate-transaction gain, because "the borrowing and repayment of the mortgage loan is a separate transaction from the purchase and sale of the personal residence." Rev. Rul. 90–79, 1990–38 I.R.B. 26 (citing *Willard Helburn,* 214 F.2d at 818–19; *Church's English Shoes, Ltd. v. Commissioner,* 24 T.C. 56, 59, 1955 WL 545 (1955), *aff'd,* 229 F.2d 957 (2d Cir.1956) (per curiam)). Moreover, since the mortgage-loan-transaction loss was not "incurred in an activity or as the result of an event described in section 165(c) of the Code[,] ... [it] may not [be] deduct[ed]...." *Id.*

Appellants concede that the mortgage loan transaction was neither carried out by a trade or business nor entered into for profit, but nonetheless urge an integrated transaction approach so as to permit their $100,000 mortgage-loan-transaction loss to be set off against the capital gain realized from the sale of their residence. Appellants point out that though we employed a separate transactions approach in *Willard Helburn,* 214 F.2d at 818, we recognized that an integrated ap-

1. In a civil action for refund under 26 U.S.C. § 7422(a), "the taxpayer must bear the burden of proving that the challenged IRS tax assessment was erroneous." *Webb v. Internal Revenue Service of the United States,* 15 F.3d 203, 205 (1st Cir.1994) (citing *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, *modified on other grounds,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932)). We review the challenged summary judgment ruling *de novo. McCabe v. Life–Line Ambulance Serv., Inc.,* 77 F.3d 540, 544 (1st Cir.1996), *petition for cert. filed,* 64 U.S.L.W. 3808 (U.S. May 29, 1996) (No. 95–1929).

proach to the transaction might have been elected by the taxpayer.[2] Unfortunately for appellants, Congress has since foreclosed an integrated transaction approach to the exclusively foreign-currency financed acquisition involved in the present case.

Appellants urge, in effect, that their mortgage loan transaction be considered part of a "hedging transaction" under I.R.C. § 988(d)(1), which might result in its integrated treatment as part and parcel of their real estate transaction. *See* 26 U.S.C. § 988(d)(1). "To the extent provided in regulations," *id.*, borrowing under a debt instrument in which the taxpayer is obligated to repay the loan in "a nonfunctional currency," *id.* § 988(c)(1), will qualify for treatment as part of a "section 988 hedging transaction" provided the taxpayer (i) entered into the transaction primarily "to reduce risk of currency fluctuations with respect to property which is held or to be held by the taxpayer," *id.* § 988(d)(2)(A)(i), *and* (ii) identified the transaction as a section 988 hedging transaction. *Id.* § 988(d)(2)(B).

Even assuming their transaction qualified, however, appellants were ineligible for "hedging transaction" treatment because it is conceded that their mortgage-loan-financing transaction was neither conducted by a trade or business nor entered into for profit. *See id.* 988(e). The Tax Reform Act of 1986 provided that the section 988 rules, and thus "hedging transaction" treatment under section 988, "would be inapplicable to foreign currency gain or loss recognized by a U.S. individual residing outside of the United States upon repayment of a foreign currency denominated mortgage on the individual's principal residence. The principles of current law would continue to apply to such transaction." H.R. Conf. Rep. No. 841, 99th Cong., 2d Sess. II–669, *reprinted in* 1986 U.S.C.C.A.N. 4757. By reason of the interpretation adopted by Congress, moreover, "[e]xchange gain or loss is separately accounted for, apart from gain or loss attributable to the underlying transaction" under present law. *Id.* at 4750. Thus, appellants' claim fails.

## 2. *Capital Gain on Real Estate Sale*

■ The government follows up with the contention that "the cost and selling price of the [residence] should be expressed in American currency at the rate of exchange prevailing as of the date of the purchase and the date of the sale, respectively." Rev. Rul. 54–105, 1954–1 C.B. 12; *see Church's English Shoes*, 229 F.2d at 958.[3] Appellants agree that the 453,374 pounds received for their residence should be translated into U.S. dollars at the $1.82 exchange rate prevailing at the date of sale. They argue, however, that the 343,147 pound adjusted cost basis of the residence, consisting of the 297,500 pound purchase price and the 45,647 pounds paid for capital improvements, likewise should be expressed in U.S. dollar terms as of the date of the *sale*. Appellants correctly state that, viewed "in the foreign currency in which it was transacted," the purchase generated a 110,227 pound gain as of the date of the sale, which translates to approximately $200,000 at the $1.82 per pound exchange rate. Therefore, they say, the difference between the approximate $300,000 gain under the govern-

**2.** *Willard Helburn* involved the tax treatment accorded a purchase of lambskins in New Zealand for inventory in the United States, where both the purchase and the financing were in pounds sterling. We noted that "[t]he purchases of the skins in New Zealand and the various financial arrangements whereby [the taxpayer] ultimately discharged in dollars its obligations arising out of such purchases might be regarded as a single integrated transaction." 214 F.2d at 818. But we also went on to note that "[t]he purchases of the skins in New Zealand might be viewed separately and distinct from the subsequent financial arrangements. . . ." *Id.* Since the taxpayer rejected the integrated transaction approach, and the parties stipulated to the tax treatment of the purchase, we treated the financing separately

from the purchase. *Id.* at 819. Finally, since the pound had dropped in relation to the dollar, we concluded that the taxpayer had realized a taxable gain by settling the mortgage loan with less costly pounds than the pounds originally borrowed. *Id.*

**3.** In *Willard Helburn,* the parties and the court, *sub silentio,* analyzed the purchase and financing of the lambskins as though the U.S. dollar were the taxpayer's functional currency. The parties stipulated that the cost of the lambskins added to the taxpayer's inventory was to be translated at the dollar-pound exchange rate prevailing at the date of their purchase, 214 F.2d at 818, and their stipulation was accepted by the court, *id.* at 819.

ment's computation, and the $200,000 gain appellants suggest, approximates a $100,000 *unrealized* foreign exchange gain on the residence that resulted from the increase in the dollar-pound exchange rate between the dates the residence was bought and sold. However fair and reasonable their argument may be, it amounts to an untenable attempt to convert their "functional currency" from the U.S. dollar to the pound sterling.

Under I.R.C. § 985(b)(1), use of a functional currency other than the U.S. dollar is restricted to qualified business units ("QBU"s). The functional currency of a QBU that is not required to use the dollar is "the currency of the economic environment in which a significant part of such unit's activities are conducted and which is used by such unit in keeping its books and records." 26 U.S.C. § 985(b)(1)(B). Although appellants correctly assert that their residence was purchased "for a pound-denominated value" while they were "living and working in a pound-denominated economy," under I.R.C. § 989(a) a QBU must be a "separate and clearly identified unit of trade or business of a taxpayer which maintains separate books and records." 26 U.S.C. § 989(a). And since appellants concede that the purchase and sale of their residence was not carried out by a QBU, the district court properly rejected their plea to treat the pound as their functional currency.

## B. *The Sixteenth Amendment Claim*

■ Appellants launch a double-barreled claim that the income taxation at issue in this case was imposed in violation of the Sixteenth Amendment. The Sixteenth Amendment eliminated any requirement that "income taxes" imposed by Congress be apportioned among the states. *See Eisner,* 252 U.S. at 205, 40 S.Ct. at 192.[4] Since *Eisner,* the Supreme Court has described "'income' . . . in its constitutional sense," as "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." *Commissioner v. Glenshaw Glass Co.,* 348 U.S.

426, 432 n. 11, 75 S.Ct. 473, 478 n. 11, 99 L.Ed. 483 (1955) (internal quotation marks omitted), *id.* at 431, 75 S.Ct. at 477. Their Sixteenth Amendment claim fails as well.

### 1. *The Mortgage–Loan Transaction Loss*

■ With their initial volley, appellants implicitly challenge the longstanding congressional power to determine allowable deductions from gross income. Federal income tax deductions are matters of legislative grace. *Welch v. United States,* 750 F.2d 1101, 1106 (1st Cir.1985) (citing *New Colonial Ice Co. v. Helvering,* 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934)). The nonintegrated tax treatment Congress accords the acquisition, sale, and financing of appellants' residence simply renders nondeductible the foreign exchange loss on their foreign-currency denominated mortgage loan. As we have made clear in the past, Congress possesses plenary power to determine allowable deductions from the gross income it has elected to tax. *See State Mut. Life Assurance Co. of Worcester v. Commissioner,* 246 F.2d 319, 324 (1st Cir.1957) (citing *Helvering v. Independent Life Ins. Co.,* 292 U.S. 371, 381, 54 S.Ct. 758, 760, 78 L.Ed. 1311 (1934)).

### 2. *The Capital Gain on the Residence*

■ Second, appellants argue that it would violate the Sixteenth Amendment to tax, as income, any foreign-exchange "gain" relating to the sale of their residence, since they *realized no* "accession to wealth" as a result of the exchange rate disparity which developed between the purchase and sale of their residence. Their argument attempts to revive the "functional currency" debate already discussed. *See supra* pps. 29–30. As the government points out, to purchase property with a foreign currency necessarily places the individual United States taxpayer "in a position to gain or lose from a change in the exchange rate . . . ." Should the foreign currency increase in value (as against the dollar) by the time the property is sold, the

---

4. "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the sev-

eral States, and without regard to any census of enumeration." U.S. Const. amend. XVI.

resulting gain in U.S. dollars, the functional currency of the individual United States taxpayer, plainly qualifies as realized income, fully taxable under the Constitution.

## III

### CONCLUSION

Accordingly, the district court judgment is affirmed. The parties shall bear their own costs.

***SO ORDERED.***