# United States Court of Appeals
## For the First Circuit

No. 07-2016

SIONO SANTOSA,

Petitioner,

v.

MICHAEL B. MUKASEY,[*] Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before
Lynch, Merritt,[**] and Howard,
<u>Circuit Judges</u>.

<u>William A. Hahn</u> and <u>Hahn & Matkov</u>, on brief for petitioner.
<u>Jeffrey S. Bucholtz</u>, Acting Assistant Attorney General, Civil Division, <u>Anh-Thu P. Mai</u>, Senior Litigation Counsel, and <u>Jeffrey R. Meyer</u>, Attorney, United States Department of Justice, Civil Division, on brief for respondent.

June 11, 2008

[*]Pursuant to Fed. R. App. P. 43(C)(2), Attorney General Michael B. Muaksey is substituted for former Attorney General Alberto Gonzales as respondent.

[**]Of the Sixth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  The petitioner, Siono Santosa, an Indonesian national, seeks judicial review of a final order of the Board of Immigration Appeals (BIA).  The BIA upheld the Immigration Judge's (IJ) denial of his request for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  Santosa argues that substantial evidence does not support the BIA's denial of his claims.  Finding no basis for overturning the order, we deny the petition.

## I.  Background

Santosa entered the United States in April 2002 as a nonimmigrant visitor.  In September of 2004, because he had overstayed his visa, the Department of Homeland Security initiated removal proceedings pursuant to 8 U.S.C. § 1227(a)(1)(B).  Santosa, in turn, applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

In support of his applications, Santosa claimed he suffered persecution in Indonesia because of both his ethnicity and his religion -- he is Chinese and a Christian.  Because of this persecution, Santosa claimed he held a well-founded fear of future persecution.  He described the persecution in testimony and in an affidavit that the IJ admitted into evidence.  We summarize the evidence as follows.

At a young age, Santosa, who is now in his thirties, was bullied in Indonesia.  When he was a third grader attending a

Christian Baptist elementary school, other students asked him for money during recess and hit him if he did not provide it. Sometimes other students would bump Santosa's arm when he was trying to eat. Santosa was also bullied as a teenager. When he was fifteen, a group of around ten people attacked him, hitting him in the head numerous times. Santosa testified that he was bullied because he was Chinese and that his Chinese friends were similarly harassed.

After graduating from high school, Santosa was the victim of four robberies. One robbery took place while Santosa was traveling on public transportation. The perpetrator threatened Santosa with a knife and took Santosa's wallet and watch. A second robbery occurred while Santosa was traveling on business by car. In the early morning hours, he and his driver grew tired and parked on the side of the road to sleep. Soon thereafter, another car pulled behind them. The driver of this vehicle, after asking for directions, produced a weapon, pulled Santosa from his car, and demanded money. Santosa denied having any money. When the driver and an accomplice searched Santosa's car and found otherwise, they hit Santosa and stole some of his property. One of the assailants wore a Muslim headpiece. Santosa's driver, a Muslim, was unharmed.

A third robbery took place after Santosa was involved in a traffic incident. Traveling on a motorcycle, Santosa passed a slow-moving car. The car then sped up and passed Santosa. Santosa

passed the car once again. After Santosa reached a barrier, the car pulled in front of him and the driver got out. The driver attacked Santosa, eventually calling over two other people who assisted the driver in beating Santosa. Though Santosa screamed, no one came to his aid and the assailants relieved him of his money. A fourth robbery occurred when a number of non-Chinese individuals forced Santosa to give them a ride in his car to a local soccer stadium. When exiting Santosa's car, the hijackers took his watch, mobile phone, and wallet.

Santosa testified that all of the robberies described above were motivated by his Chinese ethnicity. He also testified that people threw rocks at a store that he owned and that his car was destroyed. These incidents, he claimed, were similarly motivated by his ethnicity. Eventually, Santosa obtained a visa to visit a sister who lived in the United States and left Indonesia. The rest of his family, specifically three other siblings and his mother, remained in Indonesia.

The IJ rejected Santosa's claim for asylum, withholding of removal, and protection under CAT. The IJ first determined that Santosa had not been the victim of persecution. He concluded that the harassment Santosa suffered as a youth was not directly or indirectly promoted by the Indonesian government. He went on to find that although Santosa was robbed and beaten up on several occasions, the robberies and violence were likely motivated by

something other than Santosa's ethnicity or religion. In particular, the IJ believed that the roadside robbery of Santosa was merely a consequence of nefarious opportunism and that "road rage" was to blame for the beating and mugging Santosa suffered after his traffic incident. The IJ acknowledged that discrimination does exist in Indonesia, particularly against ethnic Chinese, and that Santosa had been the victim of that discrimination in some instances. The IJ noted specifically the occasion when rocks were thrown at Santosa's store. But here again, the IJ did not connect the discrimination with the Indonesian government and ultimately concluded that the petitioner merely suffered sporadic, private discrimination.

As for Santosa's claimed fear of future persecution, the IJ concluded Santosa was credible, and thus that he likely did fear future persecution. However, the IJ determined that such a fear was not objectively reasonable because nothing in the record justified it. Moreover, the IJ observed that some of Santosa's family members remained in Indonesia without event.

The BIA, writing separately, affirmed the IJ's decision for the reasons the IJ set forth.

## II.  Discussion

Santosa pursues two claims in this appeal. We address them in turn.

## A.  Asylum, Withholding of Removal, and CAT

First, Santosa argues that the BIA's conclusion that he failed to establish a viable asylum, withholding of removal, or CAT claim is not supported by substantial evidence.  We start with Santosa's asylum claim because a failure to qualify for asylum necessarily forecloses a petitioner's ability to qualify for withholding of removal or protection under CAT.[1]

In order to obtain asylum, the petitioner bears the burden of establishing he is a "refugee."  Afful v. Ashcroft, 380 F.3d 1, 3 (1st Cir. 2004).  A petitioner may establish refugee status by demonstrating he or she has a well-founded fear of future persecution that is based on one of five statutory grounds.  See 8 U.S.C. § 1101(a)(42)(A); Zarouite v. Gonzales, 424 F.3d 60, 63 (1st Cir. 2005) (noting that the five grounds are race, religion, nationality, membership in a particular social group, and political opinion).  One way to do so is by showing past persecution, which triggers a rebuttable presumption that a fear of future persecution is well-founded.  Zarouite, 424 F.3d at 63.

"Where, as here, 'the BIA adopted and affirmed the IJ's ruling, but also discussed some of the bases for the IJ's opinion, we review both the IJ's and the BIA's opinions.'"  Lin v. Gonzales,

---

[1] The standard for withholding of removal is more stringent than that for asylum.  Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002).  The CAT standard, in turn, is more stringent than that for withholding of removal.  See Tandayu v. Mukasey, 521 F.3d 97, 99 n.1 (1st Cir. 2008).

-6-

503 F.3d 4, 6-7 (1st Cir. 2007) (quoting Zheng v. Gonzales, 475 F.3d 30, 33 (1st Cir. 2007)). In reviewing the decision, we apply the deferential "substantial evidence" standard. Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004). Under this standard, we will uphold the decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Aihua Chiv Wang v. Mukasey, 508 F.3d 80, 84 (1st Cir. 2007). Put differently, we will reverse only if "[t]he record evidence would compel a reasonable factfinder to make a contrary determination." 8 U.S.C. § 1252(b)(4)(B); Pan v. Gonzales, 445 F.3d 60, 61 (1st Cir. 2006).

No contrary determination is compelled here. First, substantial evidence supports the BIA's determination that Santosa failed to prove past persecution. In order to prove past persecution, an alien must provide "'conclusive evidence' that he has suffered persecution on one of five protected grounds." Romilus v. Ashcroft, 385 F.3d 1, 6 (1st Cir. 2004) (citation omitted). Although the Immigration and Nationality Act does not precisely define "persecution," our cases provide guidance. Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). "[P]ast persecution requires that the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Id. (citation omitted). Moreover, "persecution always implies some connection to government

-7-

action or inaction." Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005).

Here, the BIA validly concluded that Santosa failed to produce conclusive evidence of past persecution. As the IJ recognized, aside from the isolated bullying Santosa suffered as a child and the occasion when rocks were thrown at his store and his car was destroyed, the other incidents were just as or more likely to have been random acts of violence than persecution based on his ethnicity or religion. See Tobon-Marin v. Mukasey, 512 F.3d 28, 31 (1st Cir. 2008) (noting that petitioner must provide sufficient evidence of a "causal nexus" between a protected ground and the persecution); see also Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005) ("[P]ersecution requires more than a showing of either episodic violence or sporadic abuse.") (citation omitted). Moreover, as the IJ and BIA noted, Santosa failed to demonstrate that the government was complicit in any of the incidents he described.

Second, substantial evidence supports the BIA's conclusion that Santosa failed to establish a well-founded fear of future persecution. Where, as here, a petitioner has failed to demonstrate past persecution, he must provide other evidence establishing his fear is "well-founded." Velásquez v. Ashcroft, 342 F.3d 55, 58 (1st Cir. 2003), abrogated on other grounds by Bocova v. Gonzales, 412 F.3d 257, 266 (1st Cir. 2005). To be

-8-

"well-founded" a fear of future persecution must be both (1) subjectively genuine and (2) objectively reasonable.  Toloza-Jiménez v. Gonzales, 457 F.3d 155, 161 (1st Cir. 2006).

Santosa's claim fails on the objective prong.  Santosa had to provide "credible, direct, and specific evidence" that would support a reasonable fear of individualized persecution.  Guzman v. INS, 327 F.3d 11, 16 (1st Cir. 2003) (quoting Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992)).  As the IJ noted, the record contained no such evidence.  In particular, there was no evidence that Santosa's family members who remained in Indonesia suffered any persecution.

## B.  Due Process

Next, Santosa argues that the manner in which the IJ conducted the immigration hearing violated his right to procedural due process under the Fifth Amendment.  In particular, he claims the judge did two things that rendered his proceeding constitutionally deficient.  First, after Santosa's counsel questioned Santosa on direct examination for ten minutes, the IJ took over the questioning.  Second, ten minutes after taking over the questioning, the IJ ended the direct examination, allowing Santosa a mere twenty minutes to present his case.[2]

---

[2] These time periods are based on Santosa's own estimates. Although the record does not conclusively refute them, the transcript of the hearing contains the IJ's remark that Santosa had been testifying for an hour and a half.

The BIA rejected Santosa's due process claim. Although the board criticized the manner in which the IJ conducted the hearing, calling it "troubling," the Board concluded that the IJ gave Santosa an adequate opportunity to present his case. It further determined that the IJ's conduct did not prejudice Santosa. We review de novo a claim that an immigration judge's conduct violated a petitioner's procedural due process rights. Teng v. Mukasey, 516 F.3d 12, 17 (1st Cir. 2008) (citing Aguilar Solis v. INS, 168 F.3d 565, 568 (1st Cir. 1999)).

An alien in an immigration proceeding is entitled to "a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government . . . ." 8 U.S.C. § 1229a(b)(4)(B). The proceeding here may have been lacking in some respects. Although it is unclear from the record how much time Santosa had to testify on direct examination, the IJ may have prematurely cut off Santosa's presentation of evidence. And though an IJ may interrogate, examine and cross-examine an alien, id. at § 1229a(b)(1), the IJ here may have overstepped his bounds by commandeering the questioning when he did.

Nevertheless, as we recently observed, "an alien is entitled to a fair hearing, not necessarily a perfect one." Pulsir v. Mukasey,___F.3d___, No. 07-1356, slip op. at 14 (1st Cir. Apr. 29, 2008). In the end, an alien must show prejudice in order to

succeed on a due process claim.  Alsamhouri v. Gonzales, 484 F.3d 117, 125 (1st Cir. 2007).  Prejudice is found where "an abridgment of due process is likely to have affected the outcome of the proceedings."  Pulsir, slip op. at 15.

On this record we cannot say that the IJ's handling of the case prejudiced Santosa.  First, Santosa testified to some degree about nearly all the incidents discussed above.  The only incident he did not testify about, the fourth robbery, was described at length in his affidavit.

Second, even had the IJ allowed Santosa to present his case without any limitations, a process to which Santosa is not entitled,[3] we are confident that he could not have advanced a successful asylum claim.  Santosa's asylum claim was weak.  It was premised on a series of unrelated events spanning more than twenty years.  He failed to identify any government involvement in the alleged persecution, and failed to establish a nexus between that persecution and his ethnicity or religion.  Finally, as the BIA noted, Santosa failed to identify any information that, but for the

_____

[3] Although an alien has the right to present evidence on his own behalf,  8 U.S.C. § 1229a(b)(4)(B), an immigration judge has a right to regulate the course of the hearing.  8 C.F.R. § 1240.1(c). "When a due process claim is aimed at a trial-management ruling, [we] must keep in mind the tension that exists between [these rights]."  Pulsir, slip op at 15.  In any event, because we conclude that the IJ's handling of the case did not ultimately prejudice Santosa, we need not conclusively determine whether the IJ inappropriately curtailed Santosa's presentation of evidence. That said, counsel's ability to ask questions is important and must be respected.  Had Santosa's argument for asylum been more persuasive, this case may have come out differently.

IJ's interference, he would have presented to cure the deficiencies in his application.  <u>See</u> <u>Shmyhelskyy</u> v. <u>Gonzales</u>, 477 F.3d 474, 482 (7th Cir. 2007) (rejecting alien's due process challenge because alien failed to explain what additional information he could have presented that would have affected the IJ's decision). Consequently, we find no due process violation.

### III.  Conclusion

For the reasons discussed above, the petition is denied.

**<u>So Ordered</u>**.