# United States Court of Appeals
## For the First Circuit

No. 23-1910

RONI MAGAEL CRUZ GALICIA; HEIDY ARACELI HERNANDEZ GENIS; and
R.O.C.H.,

Petitioners,

v.

MERRICK B. GARLAND,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Lynch and Kayatta, Circuit Judges.

Kristian R. Meyer, with whom Kevin P. MacMurray and MacMurray
& Associates were on brief, for petitioners.
Katie E. Rourke, Trial Attorney, Office of Immigration
Litigation, Civil Division, United States Department of Justice,
with whom Brian M. Boynton, Principal Deputy Assistant Attorney
General, Civil Division, United States Department of Justice, and
Sabatino F. Leo, Assistant Director, Office of Immigration
Litigation, Civil Division, United States Department of Justice,
were on brief, for respondent.

July 1, 2024

**BARRON**, **Chief Judge**.  This petition for review challenges a decision by the Board of Immigration Appeals ("BIA") that summarily affirmed an immigration judge's ("IJ") denial of a father's application for asylum, for which his wife and child were derivative beneficiaries.  We deny the petition.

## I.

The petitioners are Roni Cruz Galicia ("Cruz"); his wife, Heidy Hernandez Genis ("Hernandez"); and their minor son, R.O.C.H., each of whom is a citizen and native of Guatemala.  They entered the United States on August 7, 2021.  Because Cruz, Hernandez, and R.O.C.H. did not possess valid entry documents, they were neither admitted nor paroled into the United States. The U.S. Department of Homeland Security accordingly served them with Notices to Appear, which charged them with removability pursuant to the Immigration and Nationality Act, 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I).

Cruz then filed a Form I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  The application identified Hernandez and R.O.C.H. as derivative beneficiaries of Cruz's asylum claim.[1]  To be eligible for asylum, Cruz was required to demonstrate that he

---

[1] Because Hernandez and R.O.C.H. are derivative beneficiaries of Cruz's application for asylum, we refer to the petitioners collectively as "Cruz."  See Malonda v. Mukasey, 285 F. App'x 767, 768 n.1 (1st Cir. 2008).

- 2 -

was "unable to go back to [Guatemala] due to '[past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Lobo v. Holder, 684 F.3d 11, 16 (1st Cir. 2012) (second and third alterations in original) (quoting Hasan v. Holder, 673 F.3d 26, 30 (1st Cir. 2012)). To be eligible for withholding of removal, Cruz bore the burden of showing "that it is more likely than not that [he] would be subject to persecution on account of an enumerated ground if [he] were repatriated." Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018). To obtain protection under the CAT, Cruz was required to "show that it is 'more likely than not that he . . . would be tortured if removed to the proposed country of removal.'" DeCarvalho v. Garland, 18 F.4th 66, 72 (1st Cir. 2021) (quoting 8 C.F.R. § 1208.16(c)(2)).

In support of the application, Cruz claimed that he, Hernandez, and R.O.C.H. were members of a particular social group ("PSG") that he defined as "climate refugees."[2] Applicants seeking asylum or withholding of removal based on their membership in a PSG "must establish that the group is: (1) composed of members who

_____

[2] Cruz's Form I-589 application indicated that he was claiming eligibility for asylum on the basis of race and not membership in a PSG. However, at the hearing on the merits of the application, Cruz represented, and the IJ accepted, that he was claiming eligibility for asylum based on "one enumerated ground, climate refugees."

share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Espinoza-Ochoa v. Garland, 89 F.4th 222, 231 (1st Cir. 2023) (quoting Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015)).

Cruz's application asserted that he, Hernandez, and R.O.C.H. had fled Guatemala because, "[f]or the last two years, droughts, storms and the Covid-19 pandemic had such a terrible effect on [their] ability to live and feed [themselves]" that he and Hernandez feared that their son "might die of malnutrition" and "felt [they] had to leave in order . . . to survive." Further -- pointing to news reports describing Guatemala's "malnutrition crisis" and criticizing the Guatemalan government's response to it -- Cruz's application asserted that the family feared future persecution if they returned to Guatemala because, as the IJ assigned to the removal proceedings understood Cruz's argument, the family believed they "[would not] be protected by the government and that they [would] starve."

At the removal hearing on July 22, 2022, Cruz testified. He also submitted an affidavit in support of the application for asylum, withholding of removal, and CAT protection, as did Hernandez. The IJ found that Cruz's testimony was credible and that his and Hernandez's affidavits were as well. Nonetheless, the IJ rejected Cruz's asylum claim, finding that Cruz "did not

experience sufficient harm in his country of Guatemala to constitute past persecution"; that the asserted PSG of "climate refugees" was not legally cognizable because it was "too amorphous" and the record did not evince its "social distinction within Guatemalan society"; that his "fear of poor and impoverished conditions in his home country [was] not sufficient to constitute a well-founded fear of future persecution"; and that he had not established a nexus between his asserted PSG and any allegedly persecutory "government action." The IJ additionally found that Cruz had not carried the heavier burden of establishing his eligibility for withholding of removal and that Cruz's CAT claim failed because he had produced no evidence suggesting that he had been tortured in Guatemala or would be tortured on his return.[3]

Cruz appealed only the IJ's asylum ruling to the BIA.[4] He argued that his asserted PSG of "climate refugees" was legally cognizable and that both the past "persecution [he]

_____

[3] In addition to his climate-based asylum claim, Cruz's application asserted that he and his wife and child left because "Guatemala is a dangerous place in general," citing to the 2009 murder of Cruz's uncle by unknown individuals and a neighbor who the IJ understood to have "made [Cruz] feel uneasy." The IJ also denied Cruz asylum on this ground, finding that "these two events, taken in aggregate, do not rise to the requisite level of harm" to constitute past persecution.

[4] Cruz also appealed the IJ's antecedent decisions to deny Cruz's motions to administratively close, dismiss, or continue his removal proceeding rather than reaching the merits of his asylum claim. Cruz does not now appeal the BIA's affirmance of these decisions by the IJ.

suffered" -- which he characterized as "severe economic disadvantage and the deprivation of food and other essentials of life" -- "and [his] well-founded fear of future persecution [were] clearly on account of [his] membership in the [PSG] of climate refugees."

On September 29, 2023, the BIA affirmed, without opinion, the IJ's decision denying Cruz's asylum claim. Cruz then filed this petition for review.

## II.

"Where the BIA has summarily affirmed the IJ's determination under its streamlined procedures, we treat the findings and conclusion of the IJ as the [BIA]'s own opinion." Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003). Cruz assigns three errors to the IJ's -- and thus the BIA's -- determination that he was ineligible for asylum relief based on his claimed membership in the PSG of "climate refugees." He first contends that the IJ erred in determining that he had not established that his asserted PSG was legally cognizable. He also argues that the IJ erred in determining that he had failed to establish past persecution in Guatemala on account of his membership in the asserted PSG. Finally, he contends the IJ erred in finding that he had failed to establish a well-founded fear of future persecution in Guatemala due to his membership in the PSG.

- 6 -

We see no error, however, in the determination that Cruz failed to meet his burden to show that his asserted PSG is legally cognizable, because, reviewing the record as a whole, see INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992), we see no basis for questioning the factual finding underlying the IJ's determination that there was "insufficient evidence in the record that this [PSG] has social distinction within Guatemalan society." See id. at 481 n.1 ("To reverse the BIA finding we must find that the evidence not only supports [the opposite] conclusion, but compels it."); see Espinoza-Ochoa, 89 F.4th at 231 (explaining that to establish a legally cognizable PSG the petitioner must show that the asserted PSG has both particularity and social distinction).

True, Cruz points to a 2021 U.S. State Department Human Rights Report on Guatemala noting that the Guatemalan government "recognize[s] . . . internally displaced persons . . . within its borders . . . displaced by climate change and natural disasters." But the Guatemalan government's acknowledgement that some of its citizens have been internally displaced by climate change and natural disasters plainly is not, without more, sufficient evidence to compel the conclusion that such individuals are perceived collectively as a socially distinct group within Guatemala by either the Guatemalan government or Guatemalan society.

Cruz does also cite to several journalistic articles in the record concerning "the risks posed to members of this group, including malnutrition," to argue that "Guatemalan society perceives members of this [PSG] as a group, notable for their high risk for such humanitarian issues as malnutrition." But, crucially, Cruz points to no evidence in the record that suggests that these humanitarian issues are uniquely associated with "climate refugees" as a distinct group within Guatemala; on the contrary, the evidence on which he relies in support of that contention suggests that those issues "stem[] from structural inequalities across the country" (emphasis added). So, here too, Cruz fails to point to any evidence in the record which "not only support[s] the contrary finding, but compel[s] it." Caz v. Garland, 84 F.4th 22, 28 (1st Cir. 2023) (quoting Mahmoud v. Barr, 981 F.3d 122, 126 (1st Cir. 2020)).

As an alternative to his merits-based challenge to the BIA's decision, Cruz does advance a fallback contention. He argues that whatever the merits of the IJ's reasons for rejecting his asylum claim, the BIA nonetheless erred by affirming the denial of that claim summarily and thus without a written opinion. Cruz relies here on a regulation that the United States Attorney General promulgated -- 8 C.F.R. § 1003.1(e)(4) -- which sets forth certain circumstances in which the BIA is required to issue summary

affirmances of IJ decisions.  The regulation provides in relevant part that:

> (i) The Board member to whom a case is assigned shall affirm the decision of the . . . [IJ], without opinion, if the Board member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that
>
> > (A) The issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation; or
> >
> > (B) The factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case.

8 C.F.R. § 1003.1(e)(4)(i).

Cruz contends that his case "involves the application of precedent to a novel factual situation," both because his asserted PSG is "climate refugees" and because he is contending that the Guatemalan government's purported lack of aid to climate refugees amounts to persecution.  Thus, he argues, the BIA was required, pursuant to 8 C.F.R. § 1003.1(e)(4)(i)(A), to issue a written opinion explaining its reasons for affirming the IJ's denial of his asylum application.

Cruz contends that we have jurisdiction to address this challenge based on Haoud v. Ashcroft, 350 F.3d 201, 206 (1st Cir. 2003), in which we concluded that we could exercise jurisdiction to remand a BIA summary affirmance for further explanation where

- 9 -

it was not clear on which of two grounds -- one reviewable by this Court, the other unreviewable -- the BIA had rested its affirmance of the IJ's decision.  The Attorney General responds that a "narrow reading of Haoud is appropriate" in view of the Supreme Court's decision in Heckler v. Chaney, 470 U.S. 821, 828-30 (1985), which generally bars our review of decisions committed to agency discretion by law, and thus that we should decline to extend Haoud's jurisdictional reasoning to this case because it "does not involve a non-reviewable basis for the [IJ's] decision," as Haoud did.

We may bypass the jurisdictional question here, however, because Cruz's regulation-based challenge is clearly without merit.  See Alvarado v. Holder, 743 F.3d 271, 276 (1st Cir. 2014). To that point, Cruz's exclusive focus on the "novel factual situation" portion of 8 C.F.R. § 1003.1(e)(4)(i) is too limited because it ignores other pertinent text in the regulation.

By the terms of the regulation, the BIA must summarily affirm an IJ's decision where it reached the correct result, was free of material or harmful error, and either presented issues "squarely controlled by existing Board or federal court precedent and . . . not involv[ing] the application of precedent to a novel factual situation" or raised "factual and legal issues" that were "not so substantial that the case warrants the issuance of a written opinion."  8 C.F.R. § 1003.1(e)(4)(i)(A)-(B).  That is

- 10 -

significant, because the legal standard that governs the showing a petitioner must make to establish a legally cognizable PSG is "well-established" and routinely applied. Espinoza-Ochoa, 89 F.4th at 231. And, as we have explained, the record provides no basis for questioning the IJ's factual determination that Cruz had failed to produce evidence to show the social distinction of his asserted PSG in Guatemala. Accordingly, we discern no basis for deeming Cruz to have raised a substantial issue to the BIA with respect to his specific attempt to claim a "climate refugee" PSG, as no petitioner can succeed in claiming a PSG without providing a factual predicate for deeming it to satisfy the social-distinction requirement. See id.

Moreover, as Cruz recognizes, he cannot succeed on his asylum claim unless he can show that, among other things, the agency erred in concluding that he had failed to establish a cognizable PSG, see Perez-Rabanales v. Sessions, 881 F.3d 61, 67-68 (1st Cir. 2018) -- which, as we have already explained, the agency did not. It therefore follows that it is of no moment whether the BIA would have erred under the regulation in summarily affirming any other portion of the IJ's ruling, such as those that determined that Cruz had failed to establish past persecution and a well-founded fear of future persecution on account of his membership in his proposed PSG. See Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007) (explaining that a harmless error in the

immigration context is one "which did not affect the outcome of the [agency's] decision").  Accordingly, Cruz's regulation-based challenge to the BIA's summary affirmance of the IJ's decision fails even assuming our jurisdiction to address that challenge. Alvarado, 743 F.3d at 276.

## III.

For the foregoing reasons, we deny the petition.

**So ordered**.